IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| M. TOMAS CARDENAS, | ) ) ) ) |
| Plaintiff, | ) |
| v. | ) ) 12 C 292 ) |
| RAY R. GROZDIC, MIKE M. GROZDIC, and REAL ESTATE ADVISORS, INC., an Illinois Corporation, | ) Judge Virginia M. Kendall ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case arises out of a unique pay arrangement between the parties where M. Tomas Cardenas believed he was having wages applies to various properties by agreement of his employer, but after years passed he never saw the increased payments or the ownership in property. Cardenas sued his former employers, Ray R. Grozdic, Mike M. Grozdic, and Real Estate Advisors, Inc. (collectively "Defendants"). He alleges that they violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, in connection with the payment of overtime wages (Count I); and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, based on a failure to pay earned wages at the rate agreed upon by the parties (Count III).[1] The Defendants move to dismiss the Complaint for failure to state

---

[1] Cardenas has dropped his Illinois Minimum Wage Law claim (Count II).

1

a claim. For the reasons stated below, the Motion to Dismiss is denied.

## I. Background

In considering a motion to dismiss, all of the well-pleaded allegations are accepted as true, and all reasonable inferences are drawn in favor of the non-moving party. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). In approximately January 2002, Defendants Ray Grozdic and Mike Grozdic hired Cardenas to perform specific duties related to the leasing, maintenance, and improvement of residential units owned by the Grodzics. Ray Grozdic is involved in the day-to-day operations of Real Estate Advisors, Inc., and is the owner of multi-unit residential complexes that are managed by Real Estate Advisors, Inc. Mike Grodzic, who is also involved in the day-to-day operations of the company, is Ray Grozdic's son, and is the sole principal shareholder of Real Estate Advisors, Inc. The duties that Cardenas was hired to perform included arranging viewing appointments for prospective tenants, initiating lease agreements, collecting rents, cleaning, repairing, and improving the residential units.

Cardenas alleges that during this employment, and up until the time he was terminated on November 17, 2011, he worked Monday through Friday from the hours of 5 p.m. to 12 a.m., and oftentimes longer. He also claims that he worked on Saturdays and Sundays from 7 a.m. to 7 p.m., and oftentimes longer. Cardenas alleges that he began

working at a rate of $10.00 per hour and that after one year, the Defendants agreed to pay him at a rate of $18.00 per hour. During this time, Cardenas alleges that he was regularly working at least sixty hours per week and was therefore entitled to a rate of pay of one and one-half times his regular hourly rate for all hours worked in excess of forty hours per week.

Cardenas alleges that he was not paid his wages in hand, and instead asserts that the Grodzics provided Cardenas with an apartment which the Grozdics valued at $1,000.00 per month. Cardenas alleges that the Grozdics withheld the remaining compensation due, promising that at some point in the future the Grodzics would use the "earnings" accumulated by Cardenas to purchase more buildings and eventually transfer ownership of some building to Cardenas.

Cardenas states in his Complaint that this transfer of ownership was to take place once Ray Grozdic reached 65 years of age and retired. Cardenas alleges that Ray Grodzic turned 65 in May 2011. Cardenas subsequently asked the Grodzics multiple times when he would be transferred an ownership stake in some of the buildings. He continued to make these inquiries until he was relieved of his duties by Ray Grozdic in November 2011. The termination letter Cardenas received stated that Cardenas was no longer authorized to perform any work on behalf of the Grozdics and that he would no longer receive rental credit for the apartment in which he lived.

By a letter dated and mailed December 15, 2011, Cardenas demanded that the Grodzics pay him his earned and unpaid wages promptly. The letter was to no avail, and Cardenas timely filed a complaint with this Court. The Defendants followed with this Motion to Dismiss. The Defendants argue that neither the company, Real Estate Advisors, Inc., nor its two owners, Ray Grodzic and Mike Grodzic, are covered as an "enterprise engaged in commerce" under the Fair Labor Standards Act, and are therefore are not subject to the provisions of that law. *See* 29 U.S.C. § 203(s)(1)(A). The Defendants request that if the Court dismisses the allegations of the Complaint arising under federal law, the Court should relinquish jurisdiction over Count III of the Complaint based on a prudential denial of supplemental jurisdiction.

## II. Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), (quoting *Bell Atlantic*

4

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. If the factual allegations are well-pleaded, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 678.

### III. Discussion

At issues is whether Real Estate Advisors, Inc. is an "enterprise engaged in commerce" and whether the Grodzics are individual "employers" within the meaning of those terms under the FLSA. The interpretation of these employment definitions under the Act must be "broad and comprehensive in order to accomplish the remedial purposes of the Act." *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir.1987).

An employee is covered by the FLSA when either (1) the employee is engaged in commerce ("individual coverage"); or (2) the employer is an enterprise engaged in commerce ("enterprise coverage"). *See* 29 U.S.C. §§ 206, 207. The FLSA defines "enterprise" as the "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). Real Estate Advisor's Inc. constitutes an "enterprise" under the act because the

5

management activities of a rental unit meet the three statutory tests of an enterprise: (1) related activities; (2) a unified operation or common control; and (3) a common business purpose. *See Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512 (1973) (a fully integrated real estate management company that directs management operations at several separately owned buildings is a single 'enterprise' for purposes of the Act). But classification as an "enterprise," by itself, does not mean that an entity is covered by the FLSA. The enterprise must also be "engaged in commerce."

If a corporate defendant fits the definition of an enterprise, it still must only follow the overtime compensation rules of 29 U.S.C § 207 if it is "engaged in commerce." To be "engaged in commerce" a corporation must be: (1) an enterprise that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) has an annual gross volume of sales over $500,000.00. *See* 29 U.S.C. § 203(s)(1)(A)(i), (ii). Thus, to be classified as an "enterprise engaged in commerce" requires, among other things, annual gross revenue of $500,000.00 or greater. *See* 29 U.S.C. § 203(s)(1)(A); *accord Falk v. Brennan*, 414 U.S. 190, 191 (1973). If these elements are met, an employer is obligated to compensate an employee who works over forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

The company does not need to actually produce goods and transport them over state lines to be "engaged in commerce"; employees handling out-of-state materials to fulfill job responsibilities is sufficient. *See, e.g., Solis v. Intern. Detective & Protection Services, Ltd.*, 819 F.Supp2d 740, 748 (N.D. Ill. 2011) (holding that the employees' use of firearms and cell phones made out-of-state in the performance of their duties brought the employer within the FLSA's definition of "engaged in commerce") (citing *Brock v. Hamad*, 867 F.2d 804, 808 (4th Cir.1989) ("[L]ocal business activities [including activities of rental property management company] fall within the FLSA when an enterprise employs workers who handle goods or materials that have moved or have been produced in interstate commerce.")); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F.Supp.2d 114, 121 (E.D. N.Y. 2011) (in case involving cleaning company that employed plaintiffs to clean resedential and commercial buildings the court found "it logical to infer [] that the cleaning supplies utilized by the Plaintiffs originated outside of New York. Plaintiffs' Complaint, therefore, fairly alleges that the Defendants are an 'enterprise engaged in commerce.'"); *Radulescu v. Moldowan*, 845 F.Supp 1260, 1264-1265 (N.D. Ill. 1994) (rental property management company held to be an enterprise engaged in commerce where "pipes, faucets, nails, windows, door locks, light bulbs, grass seed, detergents, waxes, brooms, garbage bags, and salt for sidewalks." although purchased locally, "previously moved in interstate commerce," and "were handled and used by plaintiffs at all the apartment buildings

7

managed by defendant."); *Dole v. Odd Fellows Home Endowment Board*, 912 F.2d 689, 695 (4th Cir. 1990) (old persons' home was enterprise engaged in commerce where the home purchased products for use there that included food, laundry supplies, and other materials that moved in interstate commerce); *Marshall v. Brunner*, 668 F.2d 748, 751 (3d Cir.1982) (company that used trucks, tires, batteries, oil, and gas from out-of-state was "engaged in commerce"); *Brennan v. Dillion*, 483 F.2d 1334, 1336-1337 (10th Cir. 1973) (the use of paint, soap, and light bulbs manufactured out-of-state by an apartment complex owner's employees fell under FLSA). Here, Cardenas used tools and accessories that were manufactured in other states and transported to Illinois in the performance of his employment duties. Thus, Real Estate Advisors, Inc. had "employees engaged in commerce or in the production of goods for commerce, or [had] employees handling, selling, or otherwise working on goods or materials that [were] moved in or produced for commerce by any person." Furthermore, it does not appear that the Defendants dispute the fact that they had employees who were engaged in interstate commerce.

Defendants contend that Real Estate Advisors, Inc. does not fall within the scope of the definition of an "enterprise engaged in commerce" under the FLSA because its annual gross sales do not exceed $500,000.00. Cardenas alleges that the Grodzics are the owners of approximately 101 residential units in Illinois and that they collects rents on these units in amounts ranging from $850.00 to $2,000.00 per month, per unit. Cardenas alleges that

the Grodzics collect more than $100,000.00 per month in rental payments, far exceeding the $500,000.00 yearly volume of rental sales required by the Act. The Defendants dispute that their annual gross revenue exceeds $500,000.00. A motion to dismiss is used to test the sufficiency of the pleadings, not to resolve material questions of fact. *See EEOC v. Concentra Health Servs.*, 496 F.3d 773, 780 (7th Cir. 2007). After examining the pleading on its face, it is plausible to conclude that the Defendants own as many as 101 residential units, and that they collect in excess of $500,000.00 annually in rental payments. *See* 29 C.F.R. § 779.202.. Therefore, the FLSA covers Real Estate Advisors, Inc. as an "enterprise engaged in commerce."

The remaining question is whether Ray and Mike Grodzic are individually liable for violations of the FLSA. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Those with supervisory authority over employees may be held individually liable as employers under the FLSA if they were either responsible in whole or in part for the alleged violation. *See Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987). The expansiveness of the Act's definition of 'employer' and the extent of the Gordzics' control of the terms and conditions of Cardenas's work show that under the statutory definition, the Grodzics were employers of Cardenas. *See Falk*, 414 U.S. at 195. Courts in this district have held that defendants with ownership interests, day-to-day control of operations, and

involvement in the supervision and payment of employees are personally liable for a failure to pay earned wages under the FLSA. *See, e.g., Solis*, 819 F.Supp2d. at 748 (a company's leaders, with extensive daily oversight of operations, were subject to individual liability under the FLSA) (citing *Morgan v. SpeakEasy, LLC*, 625 F.Supp.2d 632, 646 (N.D. Ill. 2007) (owner who had "ultimate authority" in supervising, hiring, firing, and paying employees, was jointly and severally liable under the Act); *Harper v. Wilson*, 302 F.Supp.2d 873, 883 (N.D. Ill.2004) (holding corporate officers personally liable under the Act when the officers had a duty to pay plaintiff his earned wages)).

Here, Ray and Mike Grodzic were named as the lessors of the residential units, hired Cardenas to perform the duties they assigned, and provided Cardenas with business cards with the business address for Real Estate Advisors, Inc. Ray Grodzic is apparently the owner and lessor of the residential units operated by Real Estate Advisors, Inc. and held himself out to Cardenas as being responsible for payroll, rental credits, and purchasing of new property. Mike Grodzic's name also appears in the body of the most recent leases as a lessor, and is alleged to be involved in the day-to-day operations of the company. Ray and Mike Grodzic not only had operational control over rental activity but also made all decisions pertinent to employment practices. Both are therefore "employers" under § 203(d). Therefore they are individually liable for any unpaid overtime compensation. *See Falk*, 414 U.S. at 195; *Riordan*, 831 F.2d at 694.

The Defendants' Motion to Dismiss rests on the argument that Cardenas has failed to state a claim upon which relief may be granted because his employment does not fall within the provisions of the FLSA. However, accepting the facts alleged in Cardenas's Complaint as true, he has clearly stated a plausible claim to relief. *Iqbal*, 556 U.S. at 678

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 20, 2012